UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Kevin Abimael OCHOA-CASTILLO; Plaintiff, ) ) ) ) ) | No. _____ |
| v. ) | |
| Bryan CHRISTIAN, Acting Director, ) Houston Field Office, ) US Citizenship and Immigration ) Services; ) | Agency ID No. A208-371-261 Receipt No. MSC1691093219 |
| Lee Francis CISSNA, ) Director, US Citizenship and ) Immigration Services; ) Kirstjen NIELSEN, ) Secretary, Department of Homeland ) Security; ) William BARR, Attorney ) General ) Defendants. ) ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR WRIT IN THE NATURE OF MANDAMUS; AND, FOR DECLARATORY JUDGMENT

COMES NOW, KEVIN ABIMAEL OCHOA-CASTILLO, Plaintiff in the above-styled and numbered cause, and for cause of action would show unto the Court the following:

1.  This action is brought against the Defendants for violations of the Administrative Procedures Act (APA) and challenging their interpretation of federal law and their rejection of the Plaintiff's application for benefits under "Special Immigrant Juvenile Status" (SIJ or SIJS). The Plaintiff's Petition for Amerasian, Widow(er) or Special Immigrant ("Petition or Application"), the proper application for soliciting benefits for SIJS, was filed with and denied by Defendants to Plaintiff's detriment.

## PARTIES

2.  Plaintiff KEVIN ABIMAEL OCHOA-CASTILLO is a native and citizen of El Salvador.  He entered the United States without inspection at the age of seventeen (17) on July 31, 2015 fleeing gang violence in Honduras. He travelled with his mother to the United States. His father abandoned him when he was approximately 5 years old and has not supported the Plaintiff since. The Plaintiff's application for SIJS was denied by the Defendants.

3.  Defendant Bryan P. CHRISTIAN is the Acting Director of the Houston Field Office, United States Citizenship and Immigration Services (USCIS).  His jurisdiction includes the Plaintiff's residence, and at the time of the denial of the Plaintiff's application the official in Mr. Christian's capacity was the official charged with the adjudication thereof.  He is sued in his official capacity only.

4.  Defendant Lee Francis CISSNA is the Director of the United States Citizenship and Immigration Services (USCIS), the official charged

with managing the agency and supervising subordinate officers. He is sued in his official capacity only.

5. Defendant, Kirstjen NIELSEN, is the Secretary of the Department of Homeland Security (DHS). She is responsible for the administration, implementation and enforcement of the immigration laws pursuant to 8 USC section 1103(a). She is sued in her official capacity only.

6. Defendant, William BARR, is the Attorney General of the United States, and is authorized by law to administer and enforce the immigration laws pursuant to 8 USC section 1103(g). He is sued in his official capacity only.

## **JURISDICTION**

7. Jurisdiction in this case is proper under 28 U.S.C. section 1331 (federal question) and 1361 (mandamus), 5 U.S.C. section 701 et. Seq. (the Administrative Procedures Act), 28 U.S.C. 2201 et. Seq. (Declaratory Judgment Act). This Honorable Court enjoys plenary power to issue all necessary writs. 28 U.S.C. § 1651. The issue presented is one of federal law and/or regulation. Relief is requested pursuant to said statutes.

## **VENUE**

8. Venue is proper in this court, pursuant to 28 USC section 1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where a substantial part of the events or omissions giving rise to Plaintiff's

claim occurred. More specifically, Plaintiff's Petition for Amerasian, Widow(er) or Special Immigrant was properly filed with and denied by the Houston Field Office-US Citizenship and Immigration Services (USCIS), the office having jurisdiction over the Plaintiff's residence.

## EXHAUSTION OF REMEDIES

9. Plaintiff has exhausted his administrative remedies. His Application was properly filed with the Defendants on May 9, 2016 and was denied by Defendants on March 19, 2018. An appeal was properly filed and subsequently dismissed by the Administrative Appeals Office (AAO) of US Citizenship and Immigration Services. There is no other forum in which to challenge the denial of an application for Special Immigrant Juvenile Status.

## STATEMENT OF FACTS

10. The Plaintiff is a native and citizen of Honduras and was born on March 30, 1998. Prior to coming to the United States, the Plaintiff lived with his mother. Upon receiving death threats from hyper-violent gangs, the Plaintiff and his mother sought refuge in the United States. The Plaintiff's father abandoned the Plaintiff when he was five years old and has not supported him since.

11. Plaintiff entered without inspection on or about July 31, 2015 near Rio Grande City, Texas. The Plaintiff was detained and placed in removal proceedings along with his mother.

12. On December 11, 2015, the Defendant, through the Department of Homeland Security, U.S. Citizenship and Immigration Service Ombudsman Office, issued a series of recommendations for ensuring process efficiency and legal sufficiency in Special Immigrant Juvenile Adjudications. See Citizenship and Immigration Services Ombudsman, *Ensuring Process Efficiency and Legal Sufficiency in Special Immigrant Juvenile Adjudications*, December 11, 2015. Amongst the recommendations, the USCIS Ombudsman urged USCIS to issue final SIJ regulations that fully incorporate all statutory amendments and suggested that the consent function of USCIS in the SIJ context be interpreted consistently with greater deference to State court findings. The USCIS Ombudsman found that the existing regulations and guidance do not adequately reflect the latest in statutory amendments and that the application of USCIS's consent function was inconsistent resulting in requests to review the underlying court documents that already established the necessary findings.

13. On February 1, 2016, the Plaintiff filed an original petition for declaratory judgment in Harris County. The 313th District Court of Harris County received the petition and assigned an amicus attorney to assist the court in ascertaining factual findings and in determining the best interest of the child. At the time of filing, USCIS was regularly approving SIJS for applicants who obtained orders from State courts based upon original petitions for declaratory judgment.

14. On March 23, 2016, the Plaintiff and his Mother appeared before the Honorable Associate Judge Aneeta Jamal. The Amicus Attorney issued a recommendation to the Court with all the prerequisite

findings for SIJS including stating that the Plaintiff had been abandoned by his father, that reunification with the Plaintiff's father was not viable, and that granting the declaratory judgment was in the Plaintiff's best interest. Additionally, the Plaintiff and his mother presented testimony and evidence in support of the Petition. Judge Jamal granted the Plaintiff's Original Petition for Declaratory Judgment finding that the Plaintiff had been abused, abandoned and/or neglected by his father and that it was not in his best interest to return to Honduras. The State court order was granted one week prior to the Plaintiff turning 18 years old.

15. On April 19, 2016, then Director of USCIS, Leon Rodriguez issued a response to the recommendations on Special Immigrant Juvenile Adjudications issued by the USCIS Ombudsman. See Department of Homeland Security, U.S. Citizenship and Immigration Services, *Response to Recommendations on Special Immigrant Juvenile Adjudications*, April 19, 2016. In the response, Director Rodriguez conceded that SIJ regulations had not been updated since 1994 and that they no longer comport with statutory language. Further, the Director conceded that DHS issued a Notice of Proposed Rulemaking in September of 2011 but had not completed the rulemaking process. In response to the recommendations, Director Rodriguez stated that USCIS would issue a policy manual to provide "one set of comprehensive policies on SIJ classification." Additionally, Director Rodriguez stated that USCIS would continue the rulemaking process to amend its regulations governing SIJ classification and related applications for adjustment of status to lawful permanent residents.

16. On May 9, 2016, the Plaintiff filed Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant with the Defendants. Form I-360, is the appropriate form for requesting special immigrant juvenile status.

17. On October 26, 2016, USCIS issued a policy alert regarding Special Immigrant Juvenile Classifications and Special Immigrant-Based Adjustment of Status notifying the public that USCIS issued policy guidance in the USCIS policy manual regarding SIJ. In the policy alert, USCIS stated that the Policy Manual provided guidance, specified evidence that needs to be submitted and clarifies requirements for classification for SIJS and SIJS based adjustment of status.

18. On October 3, 2017, the Defendants issued the Plaintiff a Notice of Intent to Deny (NOID) the Plaintiff's Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant, alleging that the Declaratory Judgment lacked a qualifying dependency finding and that DHS consent was not warranted. In the NOID, USCIS repeatedly referenced the October 26, 2016 Policy Manual as justification for its legal positions.

19. On November 24, 2017, the Defendants received the Plaintiff's timely response to the Notice of Intent to Deny. In the Plaintiff's response, the Plaintiff provided certified copies of the Original Petition for Declaratory Judgment, and the supporting documentation submitted to the Harris County District Court demonstrating the reasonable factual basis for the State court's decision.

20. On March 8, 2018, the Plaintiff and his mother attended a Hearing on the Merits on their applications for asylum, withholding of

removal and protection under the convention against torture filed with the Immigration court. Immigration Judge Nimmo Bhagat denied their applications for asylum and ordered the Plaintiffs removed to Honduras. A timely appeal was filed with the Board of Immigration Appeals on March 20, 2018. The appeal is currently pending.

21. On March 19, 2018, the Defendants denied the Plaintiff's Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant. In the decision, the Defendants largely repeated its arguments from the NOID and again repeatedly referred to the October 26, 2016 Policy Manual as justification for its legal position in denying the Plaintiff's application.

22. The Plaintiff filed a timely appeal with the USCIS - Administrative Appeals Office (AAO) on April 17, 2018; the office with review authority over a denied Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant. A timely brief in support of the appeal was sent on or about May 9, 2018. In the Plaintiff's brief, the Plaintiff argued that USCIS incorrectly determined that the State court order was defective, that USCIS incorrectly withheld consent, that USCIS failed to give the State Court order full faith and credit and that USCIS made an impermissible retroactive application of non-legislative regulations by applying the October 26, 2016 Policy Manual to the adjudication of the Plaintiff's case.

23. The Appeal was dismissed by the Defendants on November 28, 2018. The Defendants again largely resorted to the October 26, 2016 policy manual and dismissed the Plaintiff's arguments that the Policy

Manual was being applied with the full force and effect of a regulation.

24. To date, the rulemaking process to amend USCIS regulations governing the SIJ classification has not been completed, the regulations still do not reflect statutory amendments passed by Congress and the Policy Manual is the principal set of rules for determining eligibility for Special Immigrant Juvenile Status.

25. Following the promulgation of the October 26, 2016 Policy Manual, approvals of identically or similarly worded State court orders based on original petitions for declaratory judgment have been issued by the Defendants.

## CAUSE OF ACTION

## COUNT 1

### WRIT OF MANDAMUS
### THE DECISION OF THE DEFENDANTS IS NOT IN ACCORDANCE WITH LAW, AND IS IN EXCESS OF STATUTORY JURISDICTION, AUTHORITY, LIMITATIONS, AND SHORT OF STATUTORY RIGHT

26. Mandamus is an "extraordinary remedy" and requires a plaintiff "to satisfy three jurisdictional prerequisites: (1) the plaintiff has a clear right to the relief sought; (2) the defendant holds a plainly defined and mandatory, nondiscretionary duty to do the act in question; and,

(3) no other adequate remedy is available." *Mustafa, et al. v. Pasquerell, et al.*, 2006 U.S. Dist. LEXIS 8047 at 7, citing *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992) and *United States v. O'Neil*, 767 F.2d 1111, 1112 (5th Cir. 1985).

27. The Defendant's SIJ Policy Manual is a "legislative" or "substantive" rule that was effectuated without undergoing the required notice-and-comment procedures of the APA. The Defendants denied the Plaintiff's petition for classification as a Special Immigrant Juvenile by using new standards espoused in the SIJ Policy Manual to his detriment. Alternatively, the Defendant's adjudications of Special Immigrant Juvenile applications are arbitrary and capricious.

28. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA embodies a "basic presumption of judicial review." *Abbot Laboratories v. Gardner*, 387 U.S. 136, 140 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967).

29. The APA instructs a reviewing court to "hold unlawful and set aside agency action...found to be –(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law... [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706 (2).

30. The APA imposes several statutory standards that must be met before a federal court can review agency action. First, the Plaintiff must show he is arguably within the zone of interests to be protected or regulated by the statute. *Texas v. United States*, 328 F.Supp. 3d

662, 705 (S.D. of Tex. 2018) quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 244, 132 S. Ct. 2199, 183 L. Ed. 2d211 (2012). Second, the SIJS Policy Manual, must constitute "final agency action" to be reviewable. *Id.* quoting, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Third, the Court must determine whether a statute precludes judicial review. 5 U.S.C. § 701 (a)(1). Finally, the Court must determine whether the Policy Manual is agency action committed to agency discretion by law. 5 U.S.C. § 701 (a)(2).

31. The Plaintiff is clearly within the zone of interest to be protected by the statute. The Defendants, in utilizing a Policy Manual to dictate classification for substantive rights under Special Immigrant Juvenile Status, moved the goalposts mid-application for the Plaintiff in establishing eligibility for a benefit. The Plaintiff was subsequently denied for failing to meet the more exacting standard and was adversely affected by the government action. It is precisely this sort of agency action that the Administrative Procedures Act seeks to prohibit through the notice-and-comment requirements.

32. The SIJ Policy Manual is the final agency action as to SIJS as evidenced by the Defendant's failure to continue the rulemaking process that began back in 2011. Seven years after initiating the rulemaking process, the Defendants have only promulgated a new Policy Manual and apply it with the full force and effect of a federal regulation but have still declined to follow their own agency's recommendations and adopt regulations that reflect statutory amendments passed subsequently to the 1994 iteration of SIJ regulations. Thus, while the Defendants claimed that the Policy

Manual was only to provide guidance in the short term, it has become the touchstone by which the Defendants analyze claims for classification for SIJS. The agency's failure to finalize the rulemaking process in the three years since the promulgation of the SIJ Policy Manual indicates the Defendant's intention that the Policy Manual is intended to be final agency action.

33. Nothing in the Immigration and Nationality Act or the corresponding regulations precludes judicial review of the current action.

34. While there is a consent function in the SIJ process, the consent function is only agency verification of statutory eligibility, and thus, the Policy Manual is not agency action committed to agency discretion.

35. Because all the statutory requirements are met, judicial review of the agency action is appropriate.

36. The SIJ Policy Manual is a "rule" as defined by the APA. 5 U.S.C. § 551. There are only two exceptions for an agency to avoid the notice-and-comment requirements of the APA for a proposed agency rule. First notice-and-comment are not required for interpretive rules, general statements of policy, or rules of agency organization, procedure or practice. 5 U.S.C. § 553 (b)(3)(A). Second, an agency may circumvent notice-and-comment if such action would be "impractical, unnecessary or contrary to the public interest. 5 U.S.C. § 553 (b)(3)(B). The latter is inapplicable here.

37. The SIJ Policy Memorandum is not a Procedural Rule. The SIJ Policy Manual has nothing to do with agency organization, procedure or practice. In order to determine whether a rule is procedural, a two-step test is applied: 1) the substantial impact test;

and 2) the "effect on those interests ultimately at stake in the agency proceeding and whether a rule imposes derivative, incident, or mechanical burdens upon regulated individuals" test.

38. Under the substantial impact test, the Defendant's SIJ Policy Manual is not a procedural rule. "An agency rule that modifies substantive rights and interests can only be nominally procedural, and the exception for such rules of agency procedure cannot apply." *Texas I*, 809 F.3d at 176 (quoting *U.S. Dep't of Labor v. Kast Metals Corp*, 744F.2d at 1153). The SIJ Policy Manual modifies substantive rights because it effectively altered who is eligible for classification for Special Immigrant Juvenile Status and therefore effected on whom the Defendants would confer lawful status. As such, there is a substantial impact upon those effected by the SIJ Policy Manual.

39. Under the "effect on those interests ultimately at stake in the agency proceeding and whether a rule imposes derivative, incident, or mechanical burdens upon regulated individuals" Test, the SIJ Policy Manual is also clearly a procedural rule for the purposes of APA. The Policy Manual establishes the substantive standard by which the agency evaluates applications for SIJ classification which sought a benefit that the agency had the power to provide. The SIJ Policy Manual imposes upon the applicants derivative, incidental and mechanical burdens in mandatory language to obtain the benefit of SIJ classification from the Defendants. As such, the SIJ Policy Manual is a procedural rule for the purposes of APA and was subject to the notice-and-comment requirements of the APA.

40. Alternatively, the Defendants' adjudications of petitions for SIJ classification are arbitrary and capricious. Prior to issuance of the SIJ

Policy Manual, applications based on State Court orders obtained following the filing of an Original Petition for Declaratory Judgment were routinely approved. After the promulgation of the Policy Manual, these State Court Orders were routinely denied. The Policy Manual was used to justify and explain why these State Court orders were deficient for the purposes of obtaining SIJ classification. However, approvals were still issued by the Defendants in many cases where the underlying State Court order was based upon an Original Petition for Declaratory Judgment after the adoption of the Policy Manual.

41. At the time the Plaintiff submitted his application for classification for Special Immigrant Juvenile Status, the Defendants were regularly approving State Court orders with identical language to that found in the State Court Order obtained by the Plaintiff. Subsequent to the Defendant's implementation of the SIJ Policy Manual, these same orders were generally denied, but not completely. Despite the SIJ Policy Manual and subsequent case law from the 5th Circuit Court of Appeals generally prohibiting Declaratory Judgment Actions from being sufficient State Court Orders for SIJ classification, the Defendants have still approved orders with identical language to that of the order obtained by the Plaintiff. See *Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018).

42. During the pendency of the Plaintiff's application, the Defendants changed the rules. Prior to the adoption of the Policy Manual, State Court orders, like the one obtained by the Plaintiff was regularly approved. While the Defendants may argue that the Plaintiff could have obtained a new State Court order complaint with the Policy

Manual, this was an impossibility for the Plaintiff. An order Nunc Pro Tunc would have been insufficient as an order Nunc Pro Tunc would not have had the effect of curing the defect in the underlying pleadings. Filing new pleadings was not an option for the Plaintiff as he turned 18 one week after his State Court hearing and thus was no longer subject to the jurisdiction of a juvenile court in Texas. According to the SIJ Policy Manual, the SIJ predicate order must be issued in custody proceedings in a Court with jurisdiction over juveniles. Given the fact that the Plaintiff turned 18 one week after obtaining the underlying State Court, this was an impossibility.

43. Counsel for Plaintiff is aware of a case of two brothers who obtained a State Court Order based on an Original Petition for Declaratory Judgment covering both siblings. The brothers applied simultaneously for SIJ classification. One brother was approved, and another was denied despite the record for both applicants being identical. This is the epitome of arbitrariness and capriciousness in agency conduct.

44. The failure of the Defendants to approve the Plaintiff's properly filed application for Special Immigrant Juvenile Status by utilizing a Policy Manual that was not properly vetted through notice-and-comment requirements, violates the Administrative Procedures Act, 5 U.S.C. § 555(b); 5 U.S.C. §§ 706(1), 706(2)(A), 706(2)(C), 706(2)(D). The Defendants' actions are arbitrary and capricious, and clearly contrary to law. 8 U.S.C. § 706(2)(A).

45. For all of the foregoing reasons, this Honorable Court should grant mandamus relief to Plaintiff. An agency cannot act as it pleases without recourse to guiding rules and principles-such as the clear

statutory language. *See Hernandez v. Reno*, 91 F.3d 776, 781 (5th Cir. 1996).   By virtue, without limitation, of the Administrative Procedures Act and of the All Writs Act, this Honorable Court possesses lawful jurisdiction to order Defendants to rescind its errant denial of the Plaintiff's application for relief under Special Immigrant Juvenile Status. Plaintiff respectfully requests such rescission.

## REQUEST FOR DECLARATORY RELIEF

46. For all the reasons outlined, *supra,* which are incorporated and re-urged herein as if fully set forth verbatim, the Plaintiff respectfully requests declaratory relief in the form of the entry of a decree which specifies the rights and liabilities of the parties to the instant litigation.  To wit, the Plaintiff respectfully requests a declaration of the statutory invalidity of the USCIS's rejection of his application for relief under Special Immigrant Juvenile Status. The Plaintiff respectfully requests a declaration of the invalidity of the Defendant's SIJ Policy Manual for their failure to comply with the notice-and-comment requirements of the APA. The Plaintiff also requests that this Honorable Court retain continuing jurisdiction over this civil action and that, after reasonable notice of hearing and hearing had, it enters any further declaratory, mandatory, or other injunctive order that is necessary to enforce any declaratory judgment. *See* 28 U.S.C. § 2412(d)(1)(A).

## REQUEST FOR ATTORNEY FEES AND COSTS

47. The Plaintiff is entitled to recover reasonable attorney's fees and costs of court, both of which he respectfully requests under the Equal Access to Justice Act. 28 U.S.C. § 2412.  The position of the Defendants herein is not substantially justified, and no circumstances exist which would render an award of fees and costs unjust. 28 U.S.C. § 2412(d)(1)(A).

## **PRAYER**

48. WHEREFORE, PREMISES CONSIDERED, in view of the arguments and authority noted herein, Plaintiff respectfully prays that the Defendants be cited to appear and answer herein and that, upon due consideration, this Honorable Court:

   (a) issue a declaratory judgment stating that Defendants' SIJ Policy Manual is final agency action constituting a "rule" as defined under the Administrative Procedures Act and subject to the notice-and-comment requirements mandated by the same therein.

   (b) issue a declaratory judgment stating that Defendants' denial of the Plaintiff's application for relief under Special Immigrant Juvenile Status was based on a rule that did not comport with the Administrative Procedures Act, or alternatively, is arbitrary and capricious, clearly contrary to law, and an abuse of discretion, and that Plaintiff is entitled to relief under Special Immigrant Juvenile Status;

(c) retain jurisdiction over this civil action to the extent necessary to ensure the entry of any declaratory, injunctive, or mandatory order that may be necessary or proper to enforce any declaratory judgment;

(d) award Plaintiff reasonable attorney's fees and costs; and

(e) grant such other relief at law and in equity as justice may require.

Respectfully submitted,


/s/Robert K. Hoffman
The Rushton Law Firm
Counsel for Plaintiff
Texas Bar No. 24073807
5909 West Loop South, Ste. 150
Bellaire, Texas   77401
(713)838-8500
(713)838-9826 Fax

## LIST OF ATTACHMENTS

| Exhibit | Description |
|---|---|
| 1 | Copy of USCIS decision denying Plaintiff's application for Special Immigrant Juvenile Status |
| 2 | AAO Appeal Decision |
| 3 | Citizenship and Immigration Service Ombudsman, Ensuring Process Efficiency and Legal Sufficiency in Special Immigrant Juvenile Adjudications, December 11, 2015 |
| 4 | USCIS, Director Leon Rodriguez, Response to Recommendations on Special Immigrant Juvenile Adjudications, April 19, 2016 |
| 5 | USCIS, Policy Alert, Special Immigrant Juvenile Classification and Special Immigrant-Based Adjustment of Status, PA-2016-06, October 26, 2016 |

## CERTIFICATE OF SERVICE

I, Robert K. Hoffman, hereby certify that a true and correct copy of the foregoing "Plaintiff's Original Complaint for Writ in the Nature of Mandamus", including all attachments, will be served on Defendants via US Postal Service Certified mail addressed as follows:

William Barr
Attorney General
US Department of Justice
950 Pennsylvania Ave, NW
Washington, DC  20530-0001

Kirstjen Nielsen
Secretary
US Department of Homeland Security
Washington, DC 20528

Bryan Christian
Director, Houston Field Office
US Citizenship and Immigration Services
810 Gears Rd.
Suite 100
Houston, Texas 77067

Lee Francis Cissna
Director
US Citizenship and Immigration Services
20 Massachusetts Ave., NW, Room 4025
Washington, DC  20536

US Attorney
PO Box 61129
Houston, TX  77208

On the 11th day of March 2019.

Respectfully submitted,


/s/Robert K. Hoffman
The Rushton Law Firm, P.L.L.C.
Counsel for Plaintiff
Texas Bar No. 24073807
5909 West Loop South, Ste. 150
Bellaire, Texas   77401
(713)838-8500
(713)838-9826 Fax

Citizenship and Immigration Services Ombudsman

## Ensuring Process Efficiency and Legal Sufficiency in Special Immigrant Juvenile Adjudications

December 11, 2015

For over 25 years, the Special Immigrant Juvenile (SIJ) visa program has provided important long-term immigration relief to certain foreign-born children who are present in this country and in need of protection. The program serves a small group of children who meet specific requirements, while other USCIS programs – including the asylum, refugee, and Central American Minors (CAM) programs – provide additional forms of relief to children fleeing persecution, violence, and other dangerous country conditions, as well as for children trying to reunite with family in the United States. I believe that now, more than ever, we should strengthen our resolve to ensure that legal protections available to vulnerable foreign children are not only administered effectively and efficiently, but with the true humanitarian spirit in which they were designed.

Since the Ombudsman's Office first issued recommendations on this topic in 2011, USCIS has made some efforts to improve SIJ adjudications. In fact, it recently accepted one of the recommendations included here – to consolidate SIJ adjudications. The agency advised it has chosen the National Benefits Center within its Field Operations Directorate for this task. If implemented with adequate training, this change stands to bring both efficiency and consistency to SIJ adjudications. However, processing petitions by a single group of officers is not enough to ameliorate the issues our office observed in reviewing this program. Among other recommendations presented here, USCIS must still issue new regulations and guidance reflective of the current state of the law, and it must stop the practice of issuing overly burdensome requests for documentation regarding underlying juvenile court dispositions.

The recommendations in this report are the result of an in-depth review of USCIS' current policies and practices in the field. I believe that, once implemented, these reforms will help achieve high quality and consistent SIJ adjudications along with a predictable and fair application process for juvenile applicants and those who serve them.

Sincerely,

Maria M. Odom

Maria Odom
Citizenship and Immigration Services Ombudsman

### RECOMMENDATIONS

The Ombudsman recommends that USCIS:

1) Centralize SIJ adjudications in a facility whose personnel are familiar with the sensitivities surrounding the adjudication of humanitarian benefits for vulnerable populations;

2) Take into account the best interests of the child when applying criteria for interview waivers;

3) Issue final SIJ regulations that fully incorporate all statutory amendments; and

4) Interpret the consent function consistently with the statute by according greater deference to State court findings.

### REASONS FOR THE RECOMMENDATIONS

- Requests for assistance submitted to the Ombudsman show inconsistent application of the standard related to the "express" nature of the consent authority, frequently resulting in requests to review the underlying court documents that have already established the necessary findings (i.e. dependency on a court of State agency; inability to be reunited with the parents dues to abuse, neglect, abandonment or similar basis; and that it is in the best interests of the child not to be returned to the country of last residence or citizenship).
- Despite high approval rates and additional training of adjudicators, stakeholders have reported inconsistent interview techniques and focus.
- Existing regulations and guidance do not adequately reflect the latest in statutory amendments.

Citizenship and Immigration Services Ombudsman

> ## Ensuring Process Efficiency and Legal Sufficiency in Special Immigrant Juvenile Adjudications

### December 11, 2015

*The Citizenship and Immigration Services Ombudsman, established by the Homeland Security Act of 2002, provides independent analysis of problems encountered by individuals and employers interacting with U.S. Citizenship and Immigration Services, and proposes changes to mitigate those problems.*

## EXECUTIVE SUMMARY

Established through the Immigration Act of 1990, the Special Immigrant Juvenile (SIJ) program has undergone a number of legislative amendments in the past 25 years. Currently it protects those children who cannot be reunited with one or both parents due to abuse, neglect, abandonment, or a similar basis under State law.[1] These statutory modifications have had a substantial impact on the SIJ adjudicatory process and on SIJ petitioners. The Ombudsman has brought a number of concerns to the attention of USCIS over the past several years, including overreach in the exercise of its consent function; the use of age-inappropriate interviewing techniques; inconsistent application of legal standards; and petition processing delays.[2] Although training has been developed and made available to improve SIJ adjudications, it has not fully resolved ongoing problems, as reflected in continued stakeholder reports to the Ombudsman as well as in agency actions that do not consistently comport to such training.

The Ombudsman recognizes that the SIJ program presents special challenges to adjudicators who handle these complex adjudications as part of their varied portfolios. The Ombudsman has discussed with USCIS the need for centralization of the SIJ adjudication function in one location. Centralization will improve the quality and consistency in adjudications by specially trained employees dedicated to these and other petitions for protective and/or humanitarian relief. It will support a higher level of compliance with statutory processing timeframes and enhance the integrity of the product line. While USCIS has committed to consolidate the full processing of SIJ petitions, the Ombudsman recommends that SIJ petitioners be treated in a manner consistent with USCIS' treatment of other vulnerable populations, including the use of age-appropriate interviewing practices. In addition, the Ombudsman continues to see examples where USCIS reassessed underlying State court dependency orders. USCIS' statutory consent function does not appropriately extend to a *de novo* review of every underlying fact that supported the Court's findings.

In short, the Ombudsman is recommending that USCIS:

1. Centralize SIJ adjudications in a facility whose personnel are familiar with the sensitivities surrounding the adjudication of humanitarian benefits for vulnerable populations;

---

[1] Immigration and Nationality Act 101(a)(27)(J).

[2] Ombudsman's Annual Reports 2015, pp. 55-59; 2014, pp. 13-15; 2013, pp. 14-16; 2012, pp. 21-22; and 2011, pp. 20-21.

# Citizenship and Immigration Services Ombudsman

2. Take into account the best interests of the child when applying criteria for interview waivers;
3. Issue final SIJ regulations that fully incorporate all statutory amendments; and
4. Interpret the consent function consistently with the statute by according greater deference to State court findings.

## METHODOLOGY

In conducting this review, the Ombudsman met with stakeholders nationwide and USCIS Headquarters officials representing the Field Operations Directorate, the Office of Chief Counsel, and the Office of Policy and Strategy to discuss the regulations, policies, and procedures impacting SIJ adjudications. The Ombudsman made site visits to USCIS field offices that perform SIJ adjudications. The Ombudsman also reviewed and sought to resolve stakeholder requests for case assistance submitted to our office over a period of several years. Finally, the Ombudsman requested and received information and data from the Field Operations Directorate regarding SIJ adjudications.

## BACKGROUND

*Statutory and Regulatory Framework.* By establishing the SIJ classification, Congress has provided immigration relief for children who meet certain qualifying criteria.[3] Generally, to be eligible to apply for SIJ status, a State juvenile court must have previously declared the child to be dependent on the court, or legally committed the child to the custody of a State agency or an appointed individual. In addition, the court must have found that the child cannot be reunited with one or both of the child's parents due to abuse, neglect, abandonment, or a similar basis under State law.[4] An administrative or judicial proceeding must have also determined that it would not be in the best interests of the child to be returned to the child's or parents' country of citizenship or last habitual residence.[5]

Congress has substantially modified the classification since it was created in 1990. For example, in 1997, Congress amended the SIJ definition to safeguard the process from abuse by restricting it to only those juveniles deemed eligible for long-term foster care because of abuse, neglect, or abandonment.[6] The amendment also required the Attorney General (now the Secretary of Homeland Security) to "expressly[7] consent to the dependency order serving as a precondition to the grant of [SIJ] status."[8] With this language, Congress introduced a new requirement – that the Secretary clearly indicate when a court order may serve as a pre-requisite to SIJ eligibility.

---

[3] Immigration Act of 1990, Pub. L. No. 101–649 at § 153(a)(3)(J), 104 Stat 4978 (Nov. 29, 1990). Historically, U.S. government efforts to protect children resulted in a gap for immigrant children who were protected during their childhood but grew into adults with no legal immigration status. *See generally* "Regulating Consent: Protecting Undocumented Immigrant Children from their (Evil) Step-Uncle Sam, or How to Ameliorate the Impact of the 1997 Amendments to the SIJ Law," Angela Lloyd, 15 B.U. Pub. Int. L.J. 237, at 1.

[4] INA § 101(a)(27)(J).

[5] *Id.*

[6] Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, § 113, 111 Stat. 2440 (Nov. 26, 1997); *see Gao v. Jenifer*, 185 F.3d 548, at 552 (1999).

[7] The term "expressly" is an adverb to describe how one makes something known or indicates clearly and definitively so as to leave no doubts about the action supported by the adverb. American Heritage Dictionary, Merriam-Webster Dictionary.

[8] Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, § 113, 111 Stat. 2440 (Nov. 26, 1997).

## Citizenship and Immigration Services Ombudsman

Congress modified the statute in this way to limit eligibility by requiring the Secretary "to determine that neither the dependency order nor the administrative or judicial determination of the alien's best interest was sought primarily for the purpose of obtaining [immigration] status … rather than for the purpose of obtaining relief from abuse or neglect."[9] At the same time, Congress expressed the clear delineation between the State court and the Federal immigration adjudicator, stating that "the involvement of the [Secretary] is for the purposes of determining special immigrant juvenile status and not for making determinations of dependency status."[10]

INS (the predecessor of USCIS for this function) issued two policy memoranda in 1998 and 1999, instructing adjudicators to request information to enable them to make independent findings regarding abuse, abandonment, neglect and best interests.[11] This was in stark contrast to SIJ final regulations published in 1993, which recognized that it "would be both impractical and inappropriate for the Service to routinely re-adjudicate judicial or social service agency administrative determinations…."[12]

In 2004, USCIS issued a third policy memorandum, employing a new term of art to describe when the agency takes action to permit a State court order to serve as a pre-requisite for SIJ:

> *Express consent* means that the Secretary… has 'determine[d] that neither the dependency order nor the administrative or judicial determination … was sought primarily for the purpose of obtaining … status … rather than for the purpose of obtaining relief from abuse or neglect [or abandonment].'[citation omitted] In other words, express consent is an acknowledgement that the request for SIJ classification is bona fide.[13]

The 2004 memorandum also instructed adjudicators to examine State court orders for independent assurance that courts acted in an "informed" way.[14] At the same time, it instructed adjudicators not to "second-guess" findings made by State courts because "express consent is limited to the purpose of determining [SIJ] status, and not for making determinations of dependency status."[15] However,

---

[9] H.R. Conf. Rep. 105-405, at 130 (Nov. 13, 1997).
[10] *Id.*
[11] INS Memorandum, "Interim Field Guidance relating to Public Law 105-119 (Sec. 113) amending Section 101(a)(27)(J) of the INA – Special Immigrant Juveniles" (Aug. 7, 1998); INS Memorandum, "Special Immigrant Juveniles - Memorandum #2: Clarification of Interim Field Guidance" (Jul. 9, 1999); http://www.uscrirefugees.org/2010Website/5_Resources/5_4_For_Lawyers/5_4_2_Special_Immigrant_Juvenile_Status /5_4_2_3_Published_Decisions_and_Memoranda/Cook_Thomas_SpecialImmigrantJuvenilesMemorandum.pdf (accessed Jun. 1, 2015).
[12] "Special Immigrant Status; Certain Aliens Declared Dependent on a Juvenile Court; Final Rule," 58 Fed. Reg. 42843-51, 42847 (Aug. 12, 1993).
[13] USCIS Interoffice Memorandum, "Memorandum #3 -- Field Guidance on Special Immigrant Juvenile Status Petitions" (May 27, 2004); http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2004/sij_memo_052704.pdf (accessed August 3, 2015).
[14] USCIS Interoffice Memorandum, "Memorandum #3 -- Field Guidance on Special Immigrant Juvenile Status Petitions" (May 27, 2004); http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2004/sij_memo_052704.pdf (accessed August 3, 2015).
[15] *Id.*

# Citizenship and Immigration Services Ombudsman

in that memorandum, USCIS instructed adjudicators to give "express consent" only if the adjudicator was aware of the facts that formed the basis for the juvenile court's rulings. This direct instruction led to adjudicators reassessing the facts underlying the juvenile court's findings, contradicting the agency's instruction not to "second-guess" findings made by State courts. Overall, the 2004 memorandum constructed a consent concept that disproportionately amplified the use of "express consent" when trying to clarify which types of orders would serve as a precondition of SIJ status.

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) contained substantial amendments to the SIJ classification. Among its amendments, TVPRA deleted the requirement to "expressly consent" to State court dependency orders serving "as a precondition to the grant" of SIJ status, and instead requires the Secretary of Homeland Security only to consent to the grant of SIJ status.[16] The previous statutory language had provided no definition of how USCIS could "expressly consent." This contributed to the confusion over whether USCIS should examine the findings of the State court for independent assurance that the court acted in an informed way.[17] By eliminating the "express" nature of the consent requirement, TVPRA recognized State court authority and "presumptive competence"[18] over determinations of dependency, abuse, neglect, abandonment, reunification, and the best interests of children.

***SIJ Adjudication Training.*** SIJ is a complex benefit adjudication, which has undergone substantial legislative changes that supersede existing regulations and written policy guidance. Accordingly, training is essential to ensure that adjudicators have the necessary resources to apply the law correctly and consistently. In early 2014, USCIS held a training session for regional representatives who then provided training and materials to USCIS adjudicators in the field.[19] The new training module includes instruction on when USCIS may consent to grant SIJ, and directs adjudicators to accept court orders containing or supplemented by specific findings of fact. Although the training offers a sample court order that represents the type and extent of factual findings required in a juvenile State court order, it does not clarify what qualifies as a "specific finding of fact." The written training allows adjudicators to issue a Request for Evidence (RFE) "if the record does not reflect that there was a ***sufficient*** factual basis for the court's findings" (emphasis added). In practice, such instruction has led to requests for information that call for exhaustive factual findings instead of verifying whether a State court has made the requisite SIJ findings – even in cases where the State court order provides more information than that offered in the USCIS training sample order.

***Approval and Denial Rates.*** In spite of a growing trend to issue overreaching and overly burdensome requests for additional information, the agency currently approves most SIJ petitions (Figure 1). As discussed in the Ombudsman's 2014 and 2015 Annual Reports to Congress, burdensome RFEs in particular reflect "overly expansive search[es] for records supporting the

---

[16] William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) § 235(d)(1), Pub. L. 110-457, 122 Stat. 5044 (2008).
[17] Consent is defined as acquiescence or agreement, or "the act or result of coming into harmony or accord." Express consent, by contrast, implies a higher standard as "positive, direct, unequivocal consent, requiring no inference or implication to supply its meaning." Black's Law Dictionary (Fifth Ed.).
[18] *Gao v. Jenifer*, 185 F.3d 548 (1999) at 556, *citing Holmes Fin. Assocs. v. Resolution Trust Corp.*, 33 F.3d 561, 565 (6th Cir. 1994).
[19] *See generally* Ombudsman's Annual Report 2014, pp. 13-15.

factual findings of State courts, including full court transcripts, and, in some cases, any and all evidence submitted in the underlying proceedings."[20]  While these RFEs rarely lead to denials, they do have an adverse impact on juvenile petitioners and their representatives who must obtain and release potentially protected information.  They also have an adverse impact on legal service providers who must expend limited resources to respond to such inquiries, which impedes the provision of *pro bono* legal services to others, especially to children.

Figure 1.  Special Immigrant Juvenile Status — Receipts, Approvals, RFEs, Notices of Intent to Deny (NOIDs), Denials, FY14 – FY15[21]

| FISCAL YEAR | RECEIPTS | APPROVALS | RFEs | NOIDs | DENIALS |
|---|---|---|---|---|---|
| 2014 Totals | 5,817 | 4,606 | 171 | 89 | 247 |
| 2015 Totals | 6,334 | 5,115 | 332 | 109 | 195 |

## ONGOING CONCERNS REGARDING THE ADJUDICATION OF SIJ PETITIONS AND USCIS EXERCISE OF CONSENT

The Ombudsman continues to observe inconsistencies in USCIS' adjudication of SIJ petitions, its application of legal principles, and the factual evaluations that are conducted under its consent authority.  Adjudicators continue to seek evidence underlying State court dependency orders, which is inconsistent with the statutory scheme and USCIS' own training materials.

***Consenting to SIJ.***  Congress eliminated both the express nature of USCIS consent, and the need for the order to serve as a precondition to the grant of status.  USCIS policy, however, did not keep up with those very significant revisions, relying instead on language that had disappeared from the statute.  As a result, RFEs and NOIDs continue to rely on outdated analytical tools.  While RFEs and NOIDs often state that USCIS is not reviewing the State court process, the practical effect is a *de novo* review of the State court's process and determinations pertaining to the abuse, neglect, or abandonment of the child.  Congress, through statute, did not charge USCIS with determining a child's best interests; whether a child has been abused, abandoned or neglected; or whether reunification with one of more parents is viable.  By statute, that is the role of the State court.  Yet, in its adjudications, USCIS has asked for documentation to assess those findings, has reviewed and second-guessed those findings, and has sought to determine whether the court exercised its dependency jurisdiction in accordance with State law.

Consent is not defined in the statute.  Through policy, USCIS exercises its consent authority by verifying whether SIJ petitions are *bona fide* [22] and whether immigration benefits were the primary

---

[20] Ombudsman's Annual Report 2014, pp. 14-15.

[21]  Data set: Form I-360 Petition for Special Immigrant Juveniles; http://www.uscis.gov/tools/reports-studies/immigration-forms-data/data-set-form-i-360-petition-special-immigrant-juveniles (Aug. 28, 2015).

[22] USCIS Memorandum, HQOPS 70/8.5 "Trafficking Victims Protection Reauthorization Act of 2008:  Special Immigrant Juvenile Status Provisions" (Mar. 24, 2009); http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/TVPRA_SIJ.pdf (accessed Jun. 1, 2015)("[T]he consent determination … is an acknowledgement that the request for SIJ classification is bona fide.")

# Citizenship and Immigration Services Ombudsman

purpose for pursuing the State court order.[23] In cases reviewed by the Ombudsman, USCIS has looked at whether the State court made an "informed decision," properly exercised its jurisdiction as a juvenile court, acted "in accordance with State law," or had a "factual basis" for its findings.[24] This has resulted in requests for documentation that are overly burdensome and intrusive, and some to which a response is difficult – if not impossible – owing to the protected nature of the court documentation.

The Ombudsman has reviewed cases where RFEs and NOIDs requested all court-related filings, evidence, transcripts, and even confidential, sealed hearing documents. These RFEs and NOIDs often result in an overly expansive review of the petitioner's intentions for seeking a dependency court order and may call into question the necessity of protection and the court's exercise of dependency upon applicable State law. The State court orders must provide specific findings of fact to enable USCIS to provide the necessary consent; those findings have been spelled out in the trainings as well as applicable guidance. However, to provide consent, the agency need not request corroboration of every underlying fact that supported those findings, nor should it substitute its application of State law for that of the court's exercise of dependency.

***Evaluating the Primary Purpose of Court Orders.*** As a whole, provisions in the TVPRA were enacted to enhance protections for at-risk children,[25] which was a shift from the 1997 amendments that sought to address problems and limit beneficiaries.[26] When Congress changed the statutory language for SIJ in 2008, it removed an entire clause that relied upon the limitations enacted in 1997 and replaced it with a simpler function. USCIS policy should reflect these statutory changes. Rather than retain the elements of "express consent" derived from the 1997 amendments, a proper implementation of the TVPRA language requires that USCIS verify whether State court orders contain the necessary factual findings and whether the State court has articulated the foundation for such findings (i.e., based upon testimony of parties, evidence submitted into the record, and/or statutory citations). USCIS does not need to evaluate intent for initiating dependency court

---

[23] USCIS Interoffice Memorandum, "Memorandum #3 – Field Guidance on Special Immigrant Juvenile Status Petitions" (May 27, 2004); http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2004/sij_memo_052704.pdf (accessed May 27, 2015). "Express consent means that the Secretary ... has "determine[d] that neither the dependency order nor the administrative or judicial determination of the alien's best interest was sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence." USCIS Memorandum, HQOPS 70/8.5 "Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions" (Mar. 24, 2009) ("The consent determination by the Secretary ... is an acknowledgement that the request for SIJ classification is bona fide. This means that the SIJ benefit was not 'sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment'" (citing H.R. Rep. No. 105-405).)
[24] Information provided through requests for case assistance.
[25] The TVPRA was enacted "to enhance measures to combat trafficking in persons, and other purposes." The section of the TVPRA in which SIJ language is modified is titled "Permanent Protection for Certain At-Risk Children." It is included in a larger section titled "Enhancing Efforts to Combat the Trafficking of Children," which contains sub-sections titled "Combating Child Trafficking at the Border and Ports of Entry into the United States," "Combatting Child Trafficking and Exploitation in the United States," and "Providing Safe and Secure Placements for Children." The 1997 amendments, by contrast, were incorporated into an appropriations bill "to address several problems encountered in the implementation of the special immigrant juvenile provision...and limit the beneficiaries of this provision." See William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) § 235, Pub. L. 110-457, 122 Stat. 5044 (2008) and H.R. Rep. No. 105-405, at 130 (1997).
[26] *Id.*

proceedings nor weigh evidence or State laws to determine whether it believes the court made proper findings.

Continuing to apply the "express consent" requirement by requiring "an acknowledgement that [requests are] bona fide,"[27] may lead to an presumption by USCIS that the primary purpose for obtaining a State court order was to obtain an immigration benefit, unless the officer has the ability to review and assess all the underlying facts of the State case. This primary purpose inquiry relies on a false dichotomy that suggests it is possible that a State court action may only focus on *either* protections against future harm *or* securing immigration benefits, when almost always, the court protections inevitably provide both in tandem. Securing stability in the form of status in the United States is irrevocably a key aspect of protecting a child from future harm. As a consequence of the "bona fide" review, "express consent" continues unaltered and USCIS adjudicators have in practice nullified the clause amended by Congress in the TVPRA.

Stakeholders have reported USCIS frequently requires petitioners to be under a continuing jurisdiction of a State court at the time of filing an SIJ petition.[28] Historically, after having been found dependent on a court, petitioners continued to remain eligible for SIJ status.[29] The INA requires that an SIJ petitioner must be a person who "has been declared dependent" on a court or "legally committed to" the custody of a State agency or an individual appointed by the court. A plain language interpretation of "has been declared...or legally committed to [the custody of an agency or individual]" does not require continued active administration by the court – rather, it allows for determinations by the court that continue into the present as well as determinations made during an unspecified period of time prior to filing an SIJ petition. Congress had, but did not exercise, the ability to restrict and limit eligibility to a person who "is dependent" upon a court within a specified time frame, including "at the time of filing."

USCIS has also interpreted its consent function to include an analysis of whether a court's exercise of dependency is valid.[30] The Ombudsman has reviewed RFEs and NOIDs that ask applicants to "provide evidence that the court order is valid under State law..."[31] This implies that a court order is not sufficient "evidence" to demonstrate that a court is issuing a valid order under State laws; or that courts knowingly issue invalid orders, or are otherwise prone to misapply State laws such that USCIS needs to probe the validity of their final product. By using its own analysis of State law,

---

[27] "[T]he consent determination … is an acknowledgement that the request for SIJ classification is bona fide. This means that the SIJ benefit was not "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment." USCIS Memorandum, HQOPS 70/8.5 "Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions" (Mar. 24, 2009) *citing* H.R. Rep. No. 105-405, at 130 (1997); http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/TVPRA_SIJ.pdf (accessed Jun. 1, 2015).
[28] According to stakeholder reports, USCIS has requested final orders to demonstrate continuing jurisdiction as well as new orders when children are transferred to guardians in other states.
[29] 8 CFR 204.11(a) ("[A] child who has been adopted or placed in guardianship [sic] situation after having been found dependent upon a juvenile court … will continue to be considered to be eligible for long-term foster care.")
[30] In recent denials USCIS has stated that "since the Petitioner was over the age of 18 at the time the SIJ order was issued, the court did not have continuing, exclusive jurisdiction pursuant to [State law]… USCIS cannot recognize the [court] order as a valid order," and petitioners "have failed to show that [the] dependency order is valid under [] state law."
[31] Information provided through requests for case assistance.

# Citizenship and Immigration Services Ombudsman

USCIS has now extended its review beyond the factual basis of abuse, abandonment, and neglect, to now include an assessment of the legal basis of a court's action, contrary to the delineation of duties between State court and Federal immigration adjudicators expressed by Congress,[32] and historic policy.[33] By examining a court's jurisdiction and delineating whether the jurisdiction of the court will be considered valid "for immigration purposes,"[34] USCIS is in effect reviving, in a novel way, the pre-TVPRA requirement to "specifically consent" to a court's exercise of jurisdiction.[35]

***Interviewing practices that are not age-appropriate.*** Through stakeholder engagements and requests for assistance, the Ombudsman has been made aware that some field office adjudicators have engaged in concerning interviewing practices. These include reliance on U.S. Customs and Border Protection Form I-213, *Record of Deportable/Inadmissible Alien* to question credibility,[36] prolonged interrogation-style interviewing, and inappropriately questioning some applicants on details about family members and abuse, abandonment, or neglect.

USCIS treats inconsistencies between the interview statements and information on the Form I-213 as fraud indicators, resulting in RFEs, NOIDs, and denials of SIJ petitions.[37] RFEs should only be issued when a petitioner fails to demonstrate "it is more likely than not that each of the required elements has been met."[38] This preponderance of the evidence standard is generally met when court orders make findings on all of the SIJ-required elements. Based on the interview process used to produce Form I-213, an RFE should be considered only if a statement entered into a Form I-213 by border officials overcomes the standard of proof that is met through a complete State court order.[39] Stakeholders report that interviews were previously 20 minutes in duration three years ago

---

[32] "[T]he involvement of the [Secretary] is for the purposes of determining special immigrant juvenile status and not for making determinations of dependency status." H.R. Conf. Rep. 105-405, at 130 (Nov. 13, 1997).

[33] "[E]xpress consent is limited to the purpose of determining [SIJ] status, and not for making determinations of dependency status" USCIS Interoffice Memorandum, "Memorandum #3 -- Field Guidance on Special Immigrant Juvenile Status Petitions" (May 27, 2004); http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2004/sij_memo_052704.pdf (accessed August 3, 2015).

[34] Decisions received by the Ombudsman's Office have included variations of the following language: "USCIS cannot recognize the [Court Order] as a valid order for immigration purposes."

[35] "[N]o juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction" Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, § 113, 111 Stat. 2440 (Nov. 26, 1997).

[36] The Record of Deportable/Inadmissible Alien (Form I-213) is a form that is completed by Customs and Border Protection officials at the time a petitioner is apprehended at the U.S. border.

[37] However, "[an] officer should generally limit reliance on records containing statements made by juveniles at the time of initial apprehension by immigration or law enforcement. Oftentimes juveniles do not share personal accounts of their family life with an unknown adult until they have had the opportunity to form a trusting relationship with that adult. Additionally, the juvenile court may make child welfare placement, custody and best interests decisions that differ from the juvenile's stated intentions at the time of apprehension." USCIS Policy Manual, Volume 6: Immigrants, Part H – Special Immigrant Juveniles, at 8.

[38] USCIS Policy Memorandum PM-602-0085, "Requests for Evidence and Notices of Intent to Deny" (Jun. 3, 2013).

[39] "Requiring evidentiary detail from an airport interview not only ignores the reality of the interview process, but would, in effect, create an unprecedented pre-asylum application process." Singh v. INS, 292 F.3d 1017, 1021 (9th Cir. Cal. 2002); "We hesitate to view statements given during airport interviews as valuable **impeachment** sources because of the conditions under which they are taken and because a newly-arriving alien cannot be expected to divulge every

and some may now exceed an hour.[40]

In asylum interviews, another context where a minor is interviewed as a principal applicant for protective benefits, officers are encouraged to regard applicants as children first and applicants second. Key guidelines from the Asylum Officers' Basic Training Course were incorporated into the 2014 SIJ Training and should be guiding interview practices. Of particular importance is guidance that an "officer may encounter gaps or inconsistencies in the child's testimony ... [t]he child may be unable to present testimony concerning every fact in support of the claim, not because of a lack of credibility, but owing to age, gender, cultural background, or other circumstances."[41] USCIS should maintain consistent interview practices for all children applying for immigration benefits.

## RECOMMENDATIONS

The Ombudsman recommends that USCIS:

1. **Centralize SIJ Adjudications in a Facility Whose Personnel are Familiar with the Sensitivities Surrounding the Adjudication of Humanitarian Benefits for Vulnerable Populations**

The Ombudsman has observed, and stakeholders report, varying interpretation and adjudicatory practices across field offices who receive the cases from the National Benefits Center. Interview practices also vary among field offices,[42] as do the rates, quality and content of RFEs and NOIDs; the detail of decisions; and timelines for adjudication. Similar case facts can lead to different outcomes depending on the office with jurisdiction over the petition.

Centralizing SIJ adjudications with specifically trained adjudicators who are familiar with the sensitivities involved in adjudicating humanitarian benefits for vulnerable populations will address a number of these issues and promote USCIS goals of efficiency and uniformity in adjudications. Extending the specialization found in USCIS product lines such as VAWA, T and U visas will ensure those deserving are approved, and those in which fraud is present are properly denied. In addition, a specialized SIJ team will be better able to protect the integrity of the SIJ program by being able to identify patterns, irregularities and fraud while making well-informed adjudications based upon SIJ-specific knowledge.

Centralizing SIJ adjudications would also help USCIS adhere to the statutorily-required adjudication timeline of 180 days. Much like other forms of adjudications, SIJ petitions have the potential for paper-based adjudications because an independent fact-finder establishes the crux of SIJ relief rather than an interview. Ensuring a centralized adjudication process will address varied

---

detail of the persecution he or she sustained." Li v. Ashcroft, 378 F.3d 959, 963 (9th Cir. 2004)(emphasis in original); "A number of federal courts have cautioned adjudicators to keep in mind the circumstances under which an alien's statement to an inspector is taken when considering whether an applicant's later testimony is consistent with the earlier statement." *Credible Fear*, USCIS Asylum Officer Basic Training Course (Revised April 14, 2006), at 19.
[40] Information provided to the Ombudsman during stakeholder meetings.
[41] *Guidelines for Children's Asylum Claims*, USCIS Asylum Officer Basic Training Course (Sept. 1, 2009), at 33.
[42] Some field offices exercise interview waivers when appropriate in accordance with training guidelines, while other offices do not.

interview practices across field offices and incorporate a process parallel to other humanitarian forms of relief.

In its 2014 and 2015 Annual Reports, the Ombudsman urged USCIS to centralize SIJ adjudications. In recent communications, USCIS indicated it is working on new procedures to centralize adjudications at a service center facility. The Ombudsman recognizes this effort and will monitor the implementation of this important change, including the training of staff and the development of interview waiver criteria discussed below.

### 2. Take into Account the Best Interests of the Child when Applying Criteria for Interview Waivers

In a meeting with the Ombudsman on June 30, 2015, USCIS noted that centralizing adjudications would include waiving certain interviews. The Ombudsman believes this to be the correct course of action for various reasons, including the size, age and sensitivities of the population. However, the criteria for assessing which interviews shall be waived should not be created primarily based on the priority interests of the USCIS Fraud Detection and National Security Division (FDNS). Offices adjudicating and addressing humanitarian concerns, such as the Office of the Chief Counsel, the Office of Policy & Strategy, and the Vermont Service Center should be equally involved. While fraud factors have an undeniable role to play to protect both the American people and the integrity of this program, substantial input from those in the agency responsible for humanitarian benefits will help ensure balanced factors for waiving interviews and development of criteria that include the best interests of vulnerable child petitioners.

### 3. Issue Final SIJ Regulations that Fully Incorporate All Statutory Amendments

The three policy memoranda, consolidated into the 2004 memorandum, have contributed to inconsistent adjudication regarding the extent of USCIS' consent function.[43] The SIJ regulations, which have not been updated since 1993, no longer comport with statutory language. DHS published a Notice of Proposed Rulemaking in September 2011,[44] but no final rules have been published.[45] To fully comply with the notice and comment requirements of the Administrative Procedure Act, as well as relieve confusion, USCIS must finalize updates to the 1993 regulations through the completion of notice and comment rulemaking. Addressing the meaningful comments of the regulated community in the issuance of a final rule as soon as possible would help clarify many of the currently problematic adjudicatory practices and clarify some of the issues arising from changes in law, gaps in outdated regulations, and memoranda.

---

[43] "USCIS is using non-legislative rules to muddle through in an extremely technical and sensitive context. USCIS guidance documents leave individual[s]… on shaky ground[.]" Administrative Law through the Lens of Immigration Law, Jill Family, 64 Admin. L. Rev. 565, at 616 (Summer 2012).
[44] 76 Fed. Reg. 54978.
[45] A final rule is now projected for April 2016. *See* http://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201504&RIN=1615-AB81.

### 4. Interpret the Consent Function Consistently with the Statute by According Greater Deference to State Court Findings

In the SIJ context, Congress determined that the State court is the finder of fact on specific issues and those judgments should be given due deference. The factual findings made by State courts should not be revisited by USCIS, and should be given deference except where there is cause to believe that they are deficient or otherwise in conflict with INA requirements. In other contexts, such as court orders of custody in family petitions, USCIS has not routinely engaged in a review of whether a court was adequately informed, properly applied State law, and properly exercised jurisdiction.[46] USCIS should presume regularity of the State court decisions rather than challenge them, and seek information regarding the consistency of the process or the courts' findings only where there is cause to believe the criteria have not been met. While it is true that in the last two fiscal years the overwhelming majority of petitions have been approved,[47] this same figure could have been achieved without burdensome RFEs, saving the time of adjudicators as well as petitions and the practitioners representing them. Instead, the low rate of denials indicates the overwhelming majority of petitioners in possession of State court orders are eligible and qualified for the status they are ultimately accorded.

## CONCLUSION

Stakeholders report and the Ombudsman has observed adjudication inconsistencies regarding USCIS' exercise of consent, age-inappropriate interviewing techniques, and delayed processing times for SIJ adjudications. USCIS continues to seek evidence underlying State court dependency orders. The Ombudsman continues to receive reports from stakeholders experiencing difficulties with pending or recently adjudicated petitions. For these reasons, the Ombudsman recommends that USCIS: (1) centralize SIJ adjudication to improve the quality and consistency of decisions; (2) take into account the best interests of the child by applying a generous interview waiver policy; (3) issue updated regulations to incorporate the statute fully, clarify policy guidance and articulate the limitations of USCIS' consent authority; and (4) interpret the consent function fully and consistently with the statute as it now exists. These steps would substantially improve adjudications and end the agency's current practice of seeking evidence underlying State court dependency orders.

---

[46] SIJ orders are similar to criminal orders and court rulings for victims of crime. "The agency must give full faith and credit to the final court decisions just as they do criminal court convictions." 15 B.U. Pub. Int. L.J. 237 at 261.
[47] Testimony of Joseph Langlois, Associate Director, Refugee, Asylum and International Operations, USCIS, before the Homeland Security and Governmental Affairs Committee, July 7, 2015.

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of the Director*
Washington, DC  20529



**U.S. Citizenship
and Immigration
Services**

April 19, 2016

TO:   Maria Odom
     CIS Ombudsman

FROM:  León Rodríguez
     Director

SUBJECT: Response to Recommendations on Special Immigrant Juvenile Adjudications

I would like to thank the Citizenship and Immigration Services (CIS) Ombudsman for her thoughtful review of U.S. Citizenship and Immigration Services' (USCIS) processes and procedures for Special Immigrant Juvenile (SIJ) adjudications.  I appreciate the work her office put into this review and welcome the insights and recommendations offered on this important topic.

The CIS Ombudsman recommends the following:
- **Centralization**:  Centralize SIJ adjudications in a facility whose personnel are familiar with the sensitivities surrounding the adjudication of humanitarian benefits for vulnerable populations;
- **Interview Criteria**:  Take into account the best interests of the child when applying criteria for interview waivers;
- **State Juvenile Court Orders**:  Interpret the content function consistently with the statute by according greater deference to State court findings; and
- **Regulations**:  Issue final SIJ regulations that fully incorporate all statutory amendments.

USCIS generally concurs with the recommendations and will work to implement them.

## Centralization and Interview Criteria

In April 2015, USCIS considered and endorsed the centralizing of SIJ adjudications, taking into account considerations both internal and external to the agency.  Currently, USCIS is preparing to centralize the processing of SIJ petitions (Form I-360) and SIJ-based adjustment of status applications (Form I-485) at the National Benefits Center (NBC).  Centralization means that both SIJ petitions and SIJ-based applications will be adjudicated at one central location with USCIS retaining the discretion to interview petitioners as needed.  Centralization will allow USCIS to improve consistency in the SIJ program and provide an enhanced ability to monitor cases and track processing times.  Additionally, the NBC adjudicates immigration applications and petitions for intercountry adoption which, like SIJ petitions, involve vulnerable populations.

Response to Recommendations on Special Immigrant Juvenile Adjudications
Page 2

The Ombudsman notes centralization will necessitate waiving many interviews.  With regards to the CIS Ombudsman concern that the Fraud Detection and National Security Directorate (FDNS) is the only component developing the interview waiver criteria, USCIS respectfully notes that this is not accurate.  The Field Operations Directorate is considering input on interview criteria from numerous program offices and directorates within the agency, including the Office of Policy and Strategy, FDNS, and the Office of Chief Counsel.  In consideration of the vulnerable nature of SIJ petitioners, USCIS plans to only refer cases for interview when it is necessary to secure information through an in-person assessment. As part of centralization, USCIS is working to ensure a more consistent approach in the administration of the SIJ program.

USCIS officers are experienced in interviewing a diverse range of applicants, including children.  In addition to their overall interviewing experience, officers have been provided specific guidelines for conducting interviews of children.  The guidance included instructions to officers that they are not to ask questions concerning the details of any abuse suffered, but rather to focus their questions on the SIJ eligibility requirements.

The CIS Ombudsman and other stakeholders have expressed concern that seeking clarification from a petitioner when information in the petitioner's immigration file differs from information contained in a juvenile court order is overreaching.  However, an officer has an obligation to review the entire immigration record when adjudicating an SIJ petition.  At times the officer may encounter evidence or information in the record that directly and substantively conflicts with other evidence or information that was the basis for the juvenile court order.  When this occurs, an officer must exercise due diligence to ensure that any such discrepancies are explained, which may include asking questions during an interview or requesting additional documentation.  USCIS interviews are designed to serve as information-gathering opportunities to determine eligibility for a particular immigration benefit request.  USCIS officers take a number of different factors into account when considering all of the information in the record, including the vulnerable nature of SIJ petitioners.

## State Juvenile Court Orders

The CIS Ombudsman recommends that USCIS give deference to State court orders and not revisit the factual findings made by State courts.  Pursuant to statutory requirements and implementing policy, USCIS will generally defer to State court orders that:

1) Have been properly issued under State law; and
2) Include or are supplemented by a reasonable factual basis that establishes the court order was sought for relief from abuse, neglect, abandonment, or a similar basis under State law, and not sought solely or primarily to obtain an immigration benefit.[1]

However, if the juvenile court order does not meet these requirements, USCIS may request further evidence.

---

[1] H.R. Rep. No. 105-405, at 130 (1997).

Response to Recommendations on Special Immigrant Juvenile Adjudications
Page 3

There is nothing in the Immigration and Nationality Act (INA) that allows or directs juvenile
courts to rely upon provisions of the INA for jurisdiction or otherwise deviate from reliance upon
State law and procedure in issuing orders. The order(s) should use language that establishes that
the specific findings or rulings were made under State law, and should not just mirror or cite to
immigration law and regulations. The juvenile court order may use different legal terms than
those found in the INA as long as the findings have the same meaning as the requirements for SIJ
classification.[2]

The CIS Ombudsman expressed concerns with the USCIS interpretation and application of its
consent function. As part of its analysis, the Ombudsman noted that the William Wilberforce
Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) eliminated the express
consent function. However, the TVPRA of 2008 simplified but did not remove the consent
requirement. INA 101(a)(27)(J)(iii). USCIS no longer expressly consents to the juvenile court
order but rather reviews the order as part of the determination that the eligibility requirements
have been met. The Department of Homeland Security (DHS)/USCIS continues to interpret its
consent function in line with the congressional history from when the term "consent" was first
added to the statute. DHS/USCIS will consent to SIJ classification when it is determined that the
request for SIJ classification is bona fide, which means the court order was sought for relief from
abuse, neglect, abandonment, or a similar basis under State law, and not sought solely or
primarily to obtain an immigration benefit[3]. USCIS does not determine whether or not a child
has been abused, abandoned, or neglected or re-weigh the evidence to form independent
conclusions about what is in a child's best interests. Orders that include or are supplemented by
a reasonable factual basis for the required findings will usually be sufficient to establish
eligibility. The juvenile court findings need not be overly detailed, but must reflect that the court
made an informed decision for each of the required findings.

## Regulations and Policy

Additionally, the CIS Ombudsman noted that the SIJ regulations, which have not been updated
since 1994, no longer fully comport with statutory language. The Ombudsman acknowledged
that DHS issued a Notice of Proposed Rulemaking in September 2011, and recommends that
DHS complete the rulemaking process.

To meet the goal of issuing consolidated and updated guidance in the short term, USCIS plans to
issue clarifying policy guidance via the USCIS Policy Manual. This forthcoming guidance[3] on
SIJ classification will provide one set of comprehensive policies on SIJ classification. This
guidance will include additional clarification on long-standing USCIS policy as to the USCIS
consent function. USCIS estimates that this policy guidance will be issued in 2016. Once
published, this policy guidance will be publically available on the USCIS website.

---

[2] See 101(a)(27)(J).
[3] H.R. Rep. No. 105-405, at 130 (1997).
[3] USCIS notes that the guidance cited in the CIS Ombudsman's recommendation (footnote 37) was draft and has not
yet been finalized. This policy is undergoing internal clearance and is subject to change.

Response to Recommendations on Special Immigrant Juvenile Adjudications
Page 4

In addition, USCIS has published outreach materials that are available on the USCIS website.
USCIS also conducts nationwide outreach for stakeholders to further build understanding of the
current requirements. In Fiscal Year 2015, USCIS conducted over 25 SIJ outreach engagements.
Finally, USCIS will continue the Federal rulemaking process to amend its regulations governing
the SIJ classification and related applications for adjustment of status to lawful permanent
residence. The final rule will implement updates to eligibility requirements and other changes
made by the Trafficking Victims Protection Reauthorization Act of 2008. Information on the
estimated timeline for publication can be found in the Unified Agenda of Proposed Regulatory
and Deregulatory Actions, which is published on a biannual basis.



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC 20529-2000

**U.S. Citizenship
and Immigration
Services**

October 26, 2016                                              PA-2016-06

# Policy Alert

SUBJECT:   Special Immigrant Juvenile Classification and Special Immigrant-Based
Adjustment of Status

**Purpose**

U.S. Citizenship and Immigration Services (USCIS) is issuing policy guidance in the <u>USCIS
Policy Manual</u> regarding the special immigrant juvenile (SIJ) classification and special
immigrant-based (EB-4) adjustment of status, including adjustment based on classification as a
special immigrant religious worker, SIJ, and G-4 international organization or NATO-6
employee or family member, among others.

**Background**

Certain foreign nationals may be eligible for classification as special immigrants and seek
adjustment to lawful permanent resident status based on such classification. One such
classification is SIJ, which is available to certain children who, as determined through state
juvenile court proceedings, cannot reunify with one or both parents because of abuse, neglect,
abandonment, or a similar basis under state law.

This guidance, contained in Volumes 6 and 7 of the Policy Manual, replaces the guidance found
in Chapter 22.3(q) of the Adjudicator's Field Manual (AFM) and the AFM's related appendices.
Except for the *Perez-Olano* Policy Memo 602-0177,[1] any related policy memoranda are
rescinded and are no longer in effect. The guidance contained in the Policy Manual is controlling
and supersedes any prior guidance.

**Policy Highlights**

<u>*Volume 6, Part J: Special Immigrant Juveniles*</u>

- Provides guidance on eligibility and evidentiary requirements that apply to petitions for SIJ
classification.

- Incorporates Trafficking Victims Protection Reauthorization Act of 2008 and *Perez-Olano*
Settlement Agreement and Stipulation provisions, including age-out protections.

---

[1] This policy memo remains current and has not been superseded by the Policy Manual. See "<u>Updated
Implementation of the Special Immigrant Juvenile Perez-Olano Settlement Agreement</u>," issued June 25, 2015.

PA-2016-06: SIJ Classification and Special Immigrant-Based Adjustment of Status
Page 2

- Clarifies guidance relating to the juvenile court order required findings on dependency or custody, non-viabilty of parental reunification and best interests of the child, and reaffirms that these findings must be made under state child welfare law.

- Clarifies requirements for juvenile court order validity, including jurisdiction and exceptions to the court order having to be valid at the time of filing and adjudication.

- Provides clarifying guidance on the statutorily mandated USCIS consent function.

- Provides updated guidance on interviews of SIJ petitioners.

*Volume 7, Part F: Special Immigrant-Based (EB-4) Adjustment*

- Provides guidance on eligibility requirements that apply to special immigrant-based adjustment applicants, including adjustment based on classification as a special immigrant religious worker, SIJ, and G-4 international organization or NATO-6 employee or family member, among others.

- Explains the scope and applicability of the bars to adjustment.

- Explains the inadmissibility requirements (specifying which grounds of inadmissibility apply and which do not) as well as the waiver requirements.

- Specifies the evidence special immigrant-based adjustment applicants should submit.

- Explains special issues related to adjudications, such as filing guidelines (including when concurrent filing is available), interviewing, age-out protections (if applicable), fraud, and revocation.

**Citation**

Volume 6: Immigrants, Part J, Special Immigrant Juveniles [6 USCIS-PM J]; Volume 7: Adjustment of Status, Part F, Special Immigrant-Based (EB-4) Adjustment [7 USCIS-PM F].